**Cornelius SHOAF, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–81–244–CR.

Court of Appeals of Texas, Fort Worth.

April 2, 1986.

White & Allison, P.C. and William A. White, Austin, for appellant.

Tim Curry, Criminal Dist. Atty., and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, for the State.

Before FENDER, C.J., and ASHWORTH and HILL, JJ.

## OPINION

HILL, Justice.

The appellant, Cornelius Shoaf, was convicted by a jury of the murder of Sandra Shoaf. The jury assessed his punishment at twelve years and six months in the Texas Department of Corrections.

This Court initially affirmed. Upon rehearing, this Court, relying on *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Crim.App. 1983), reversed, holding that the charge to the jury was fundamentally defective because it failed to require the State to meet its burden of establishing beyond a reasonable doubt that Shoaf was not acting under the immediate influence of sudden passion arising from an adequate cause.

In July, 1985, the Court of Criminal Appeals, noting that Shoaf had not lodged this objection to the charge at trial, remanded the cause to this Court for further proceed-

ings consistent with their opinion in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim. App.1985).

Inasmuch as appellant did not object at trial to the error in the court's charge, we must next decide whether the error was so egregious and created such harm that appellant has not had a fair and impartial trial—in short, "egregious harm". *See id.* at 171; TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981).

■ In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Id.* at 174.

The victim, Sandra Shoaf, Cornelius' wife, was found in her home by relatives. She died from multiple stab wounds and blows to the head. Cornelius voluntarily testified before the Tarrant County Grand Jury. His testimony was offered into evidence at trial. In his testimony, Cornelius told of an argument he and Sandra had beginning one morning about a note he had co-signed for another woman. He said that late in the evening the deceased took up the argument again. He testified that she threatened divorce, insulted him by calling him "the biggest sucker around," and told him she was going to make a fool out of him and take everything he had. Instead of telling the jurors that this made him angry and upset, he said he had just laid his head on the dining room table because he was tired. He said that when he looked up toward the kitchen, Sandra was approaching him with a knife. He then told of a fierce struggle. He related that the wounds she suffered, including those he inflicted with a heavy kitchen pot, were due to his efforts to disarm her as she tried to stab him with the knife.

In closing arguments, Cornelius' attorney emphasized a lack of intent to kill and self-defense, although he briefly urged the jury to consider voluntary manslaughter as well as lesser-included offenses in the event that they did not accept his claim of self-defense.

In view of the fact that voluntary manslaughter was an incidental and not a primary defensive theory, we find that any harm caused to Cornelius Shoaf by the error in the charge was not egregious. *Lawrence v. State*, 700 S.W.2d 208 (Tex. Crim.App.1985); *but see Castillo-Fuentes v. State*, 707 S.W.2d 559 (Tex.Crim.App. 1986) (voluntary manslaughter was the primary defense, not an incidental defensive theory).

■ Shoaf contends that since this error in the charge is a violation of his rights under the United States Constitution, as outlined in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), that we should apply the standard of harmless error review set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), rather than the *Almanza* standard. We decline to do so, holding that federal constitutional rights are subject to the reasonable application of a state contemporaneous objection rule. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We overrule ground of error number one.

Prior to reversing this cause on rehearing by sustaining ground of error number one, then Associate Justice W.A. Hughes, Jr. authored an opinion which discussed Shoaf's grounds of error numbers two, three, and four. We adopt as our opinion the following portion of that original opinion:

"Sandra Shoaf, appellant's wife, phoned her mother, Mrs. Flora Crawford, at about 11:30 p.m., May 14, 1979. After the call, Mrs. Crawford expected Sandra to come over to her house that night. Mrs. Crawford called back to the Shoaf house and appellant told her she was in the bathroom and he would have her call back. Mrs. Crawford again called the Shoaf residence

and was told by appellant that she could not speak to Sandra because they were talking over their problems and he was begging her not to leave.

Mrs. Crawford then called her daughter, Caroline Williams, and asked that Mrs. Williams and her husband, Lee, go to the Shoaf residence, which they did. No one came to the door when the doorbell was rung. The Williamses entered the house and found Sandra lying unconscious in a pool of blood on the kitchen floor. Appellant was not seen at the scene. Mrs. Williams went forthwith to a neighbor's house and called the police.

The police arrived and, on getting no response (other than a moan) to their doorbell ringing and vocal announcements, entered the house. Police Sergeant Charles Weldon Moyers found Sandra on the kitchen floor, where he noted multiple wounds to her head and body. Paramedics took her to the hospital where she died of her wounds hours later.

Sergeant Moyers searched the house and found no other persons therein. He did find a bloody pot and knife in the kitchen and some bloody blue jeans in a bedroom. A billfold containing appellant's driver's license was found in the jeans by Sergeant Hargraves of the Forest Hill Police Department at about 1:30 a.m. of May 15th. And at 11:00 a.m. of May 15th, Chief Alan Duane Selman of the Forest Hills Fire Department found appellant sleeping in a closet in a vacant house seventy-five feet from the Shoaf residence. He was wearing only underpants and socks. He had cuts on his hands and blood on his body. Chief Selman found appellant by observing blood on the curb, driveway and front door of the vacant house and a trail of blood through the house to the bedroom where appellant was found in the closet.

Over appellant's objection, part of his grand jury testimony was admitted into evidence. Appellant introduced the rest of such testimony to 'rebut or explain' the testimony that was first admitted. Also, a complete tape recording of such testimony was played to the jury.

Appellant's grand jury testimony was that his wife accused him of 'having a relationship with another woman.' After the argument appellant laid his head on the dining room table to rest. The testimony of appellant then was:

When I kind of turned my head to the left to look towards the kitchen, because she had gotten up, too, this is when I saw her with this knife. She started approaching me with this knife.

I jumped up and grabbed the knife with both hands and I pushed her in the corner. When I pulled back, that's when I grabbed the blade of the knife and then we struggled in the kitchen and then I grabbed this frying pan, which I had washed previously, and then I hit her with this and then that kind of threw us back to the left and we was back in the back end of the kitchen by the garage, the garage door, and there was a fierce struggle back there. I was trying to take this knife from her and she was pushing towards me and I was pushing towards her.

Q How many times did you strike her with the frying pan that you had washed?

A One time.

Q Was that a heavy, metal frying pan?

A It was a light weight frying pan, because when I hit her with this frying pan the handle broke on it.

Further grand jury testimony of appellant disclosed that he hit the deceased three times with a heavy pot to defend himself.

\*   \*   \*   \*   \*   \*

▮▮ Ground of error number two sets forth the contention that error was committed in admitting the grand jury testimony of the appellant during the State's case in chief. We hold that V.A.C.C.P. art. 38.22, sec. 5 removed the 'for impeachment purpose only' question on grand jury testimony and permits the use of same on State's case in chief. We hold that the use of such testimony did not violate appellant's rights against self-incrimination. He was advised

before testifying before the grand jury of his right to remain silent and that any statements he did make could be used against him. *United States v. Washington*, 431 U.S. 181, 52 L.Ed.2d 238, 97 S.Ct. 1814 (1977). We overrule ground of error number two.

■ Ground of error number three: The prosecutor, in final argument, improperly commented on appellant's failure to testify.

The complained of statement:

(MR. DRAGO) What did Sandra Shoaf do that caused this Defendant to cut, stab, beat, and disfigure her as the evidence showed that he did?

She asked this Defendant about a bank loan that he made for a woman named Stella. That was the crime. That was the offense that Sandra Shoaf committed that caused her to receive the death penalty. That was the mistake, but you don't question Cornelius. You don't bother Cornelius Shoaf asking about something like that. That's offending—

MR. FREDERICK: I'm going to object. I believe that's a statement by State's Counsel on the Defendant's failure to testify.

THE COURT: Overrule the objection.

MR. DRAGO: You don't question Cornelius Shoaf about things that a wife has a right to know because that offends Cornelius Shoaf, even if you are his wife.

*Rogers v. State*, 598 S.W.2d 258, 264 (Tex. Cr.App.1980):

In order to offend Art. 38.08, V.A.C. C.P., 1965, the implication that the language used had reference to an accused's failure to testify must be a necessary one. It is not sufficient that the language might be construed as an implied or indirect allusion thereto. See *Ramos v. State*, 419 S.W.2d 359 (Tex.Cr. App.1967).

Reading the paragraph as a whole it is apparently concerned with stressing the matter of appellant's taking offense at his wife's questioning him about another woman and that such brought on his attack on her. We hold this to be a reasonable deduction on the intent of the appellant. *Rogers v. State, supra.* Ground of error number three is overruled.

Ground of error number four: The trial court erroneously admitted evidence seized during an unlawful search of appellant's residence. No search warrant was ever issued in this case and appellant contends the search of his residence was unconstitutional under the ruling in *Mincey v. Arizona*, 437 U.S. 385, 57 L.Ed.2d 290, 98 S.Ct. 2408 (1978). *Mincey* affirmed the right of police to make warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. *Wayne v. United States*, 115 U.S.App.D.C. 234, 318 F.2d 205 (1963). The police may seize any evidence that is in plain view during the course of their legitimate emergency activities. *Michigan v. Tyler*, 436 U.S. 499, 56 L.Ed.2d 486, 98 S.Ct. 1942 (1978). In the initial police entry into Mr. Shoaf's house (also the home of the victim, Mrs. Shoaf), Sergeant Moyers discovered what appeared to be bloodstains on the living room floor, a bloody knife and pot in the kitchen area and a pair of blood soaked blue jeans in a bedroom (the owner of which blue jeans was not at that time found but was, obviously, a logical object of search). This initial search occurred at 12:44 a.m. and a short time thereafter.

At or about 1:30 a.m., Detective Sergeant Hargraves and Sergeant Nichols of the Forest Hills Police Department arrived at the Shoaf home to conduct a crime search, Hargraves testifying it was standard procedure for detectives rather than patrolmen to do such searches and collect evidence. He also said no emergency existed when he arrived and the owner did not consent to any search. They searched the house for four hours and seized a bloody kitchen knife and pot from the kitchen, a pair of bloody blue jeans from the southeast bedroom, a billfold containing appellant's Texas driver's license from the blue jeans and a consumer's note and security agreement issued by the First National Bank of Fort Worth from the dining room. All of the seized items enumerated except

the note and security agreement were introduced over the appellant's objection. Photographs of the house and objects within it were taken by the chief of the Forest Hills Fire Department and were admitted into evidence over appellant's objection.

A diagram of the floor plan of the house drawn by Sergeant Hargraves was admitted also over appellant's objection.

 From the evidence before us, we conclude that Officer Moyers was justified in entering the Shoaf house and his search and observance of the items admitted into evidence from the house was legally proper. Bearing in mind that appellant had not then been located and could have been a victim himself, for all the police knew, we hold the search by the detectives to be a valid continuation of the initial search. *Michigan v. Tyler, supra.* Also we agree with the trial court that actually picking up the items, tagging and preserving them was an administrative duty incidental to the original entry of Officer Moyers.

We overrule ground of error four."

The judgment is affirmed.