In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00043-CR
______________________________


BARBARA BELL JOHNSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the Fifth Judicial District Court
Cass County, Texas
Trial Court No. 2003F00104


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
            As midnight neared in the Johnson home in rural Cass County, after an evening of drinking
and arguing with her husband, Barbara Bell Johnson killed him by shooting him once in the back. 
She maintains, however, she acted in self-defense. From her conviction and fifteen-year sentence,
Johnson appeals, urging two points of error: she asserts the trial court erred in overruling, first, her
motion to suppress evidence obtained during the warrantless investigation inside her home and,
second, her motion for directed verdict. We hold (1) overruling the motion to suppress was error
as to only a few items of evidence and was harmless, and (2) the trial court properly overruled
Johnson's motion for directed verdict. Thus, we affirm the judgment.
1. Overruling the Motion To Suppress Was Harmless Error
            We first review the suppression issue. Johnson argues the court erred by failing to suppress
evidence which was obtained from inside the Johnson home by sheriff's investigators during the third
entry of the home by officers that night.


 Because (a) out of the three entries into the home that night
by officers, (b) the first two were permissible under the emergency doctrine, authorizing the
admission of evidence in plain view during those two entries, and (c) requiring exclusion of only the
few items of evidence actually discovered during the excessively broad search during the third entry
or arising therefrom, (d) which admission of evidence was harmless.
            a. There Were Three Distinct Entries
            A proper analysis of this issue requires us to focus on events starting with the initial report
of the shooting. Johnson called 9-1-1 shortly before midnight to report she had shot her husband. 
Though the Johnson home lies in the sheriff's jurisdiction, outside the City of Atlanta, the closest
officer at that moment was Atlanta police officer Eric Jones, who became the first officer on the
scene. Jones met Johnson at her front door, while she was still on the telephone with the 9-1-1
dispatch operator. Johnson told Jones she had shot her husband. Jones handcuffed her and placed
her in his squad car. He then entered the house and made a proper protective sweep of the house. 
While doing so, he saw the decedent lying in the living room, could not find a pulse, and concluded
he was likely dead. Jones also, during that sweep, saw the pistol on the kitchen counter and left it
undisturbed. While the record is silent on exactly what Jones saw during his protective sweep of the
house, his protective sweep required him to enter and perform a quick visual scan in each room of
the house.
            Once he completed his sweep, Jones then left the house and called paramedics. On their
arrival, the paramedics entered the house with Jones and confirmed that Mr. Johnson was, indeed,
dead. Jones and the paramedics then left the house. About fifteen minutes later, investigators
arrived from the sheriff's office, and Jones left the scene after transferring Johnson to a car of one
of the investigators.
            Copeland arrived at the residence at approximately 12:40 a.m. and entered the house, where
he found two other sheriff's office investigators already inside: Dale Gentry was looking around, and
John Spann was taking photographs. During this entry of the home by the three sheriff's
officers—the third entry of the home by a law enforcement official that night—photographs were
taken showing the location and condition of the body and views of various rooms of the house and
various blood deposits. Notes and measurements were also taken, from which a diagram was made
of the basic floor plan of the house showing the locations of the body, the blood deposits, the gun,
and—notably for the purposes of this opinion—a single spent shell casing. The State used these
pieces of evidence to describe to the jury the immediate crime scene and much of the rest of the
home's interior. Also during this third entry, officers seized the gun and the empty shell casing as
evidence. Based on this entry, there was extensive testimony from Copeland about the location of
blood spatter and smears, in connection with the State's suggestion that Mr. Johnson was shot in the
back while sitting in a chair, but apparently not leaning against the chair back.


 Thus, during the
first day of trial, and before the suppression hearing later that afternoon, all of this evidence was
before the jury.
            The parties agree that Jones was justified in the first entry of the home that night, under the
emergency aid and protective sweep doctrines, to determine whether anyone inside the house needed
assistance or endangered anyone else. The parties also agree that Jones and the two paramedics were
justified in the second entry into the house to confirm the death of Mr. Johnson. What was seen in
plain view during those two legitimate entries was properly the subject of testimony by the
individuals who participated in those entries.
            The parties disagree, however, about evidence obtained during the third entry into the house. 
Once the emergency and protective sweep exigencies had ended—that is, after the second
entry—law enforcement and medical personnel withdrew from the home. The question before us
involves the legitimacy of the subsequent, third entry of the home by sheriff's personnel and the
scope of their legitimate evidence-gathering powers during that third entry.



            The State argues on appeal that because the evidence collected during the third entry into the
home was in plain view during the prior, justified entries, it could lawfully be seized at that later
time. As to most of the disputed evidence, we agree.
            b. Evidence Was Admissible If in Plain View During First Two Entries
            Both the Fourth Amendment to the United States Constitution and Article I, Section 9 of the
Texas Constitution forbid unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const.
art. I, § 9. Warrantless searches are per se unreasonable unless they fall under one of a few
exceptions. Brimage v. State, 918 S.W.2d 466, 500 (Tex. Crim. App. 1996) (plurality op. on reh'g);
Kelly v. State, 669 S.W.2d 720, 725 (Tex. Crim. App. 1984).
            Under the emergency doctrine exception, police officers are not barred from making
warrantless entries and searches when they reasonably believe that a person within is in need of
immediate aid. Mincey, 437 U.S. at 392; Janicek v. State, 634 S.W.2d 687, 690–92 (Tex. Crim.
App. 1982); see Laney v. State, 117 S.W.3d 854, 861 (Tex. Crim. App. 2003) (exception applies if
officer has immediate, reasonable belief of need to protect or preserve life or avoid serious injury). 
During an emergency or protective sweep of otherwise private premises, officers may seize any
evidence that is in plain view and readily appears to be evidence relevant to a criminal investigation. 
Laney, 117 S.W.3d at 862. At the time Jones first entered the residence, he had been told that a
person had been shot. Thus, he had the authority under that doctrine to enter and determine whether
anyone was in need of immediate aid.
            A "protective sweep" is a "quick and limited search of premises, incident to an arrest and
conducted to protect the safety of police officers or others." Maryland v. Buie, 494 U.S. 325, 328
(1990); Reasor v. State, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000). Jones had just arrested
Johnson, and although she had admitted shooting her husband, in such a situation we agree the
officer would have the authority to execute a sweep of the premises in the interest of his own safety
and that of others. Jones could have testified about anything he saw during the course of his two
entries under the emergency doctrine, including his protective sweep of the home's interior, and he
could have, at that time, seized apparent evidence in plain view. See Berry v. State, 579 S.W.2d 487,
490 (Tex. Crim. App. 1979); Ramirez v. State, 105 S.W.3d 730, 746 (Tex. App.—Austin 2003, no
pet.).
            The State asserts that the "plain view" doctrine justified deputies' actions in re-entering the
premises and conducting their investigation. The plain view exception requires that "(1) law
enforcement officials have a right to be where they are, and (2) it be immediately apparent that the
item seized constitutes evidence." Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). The
question is whether the deputies' subsequent seizure of evidence, during the third entry, was
constitutionally permissible based on plain views obtained during the first two entries.
            Strikingly similar facts to those at hand are found in a 1986 opinion from one of our sister
courts of appeals. See Shoaf v. State, 706 S.W.2d 170, 174–75 (Tex. App.—Fort Worth 1986, pet.
ref'd). In Shoaf, a husband shot his wife in a domestic dispute, resulting in an emergency entry into
the home, followed about forty-five minutes later by the challenged subsequent warrantless entry by
different law enforcement personnel, who seized evidence and documented the scene of the shooting
using photography and observations which led to a diagram of the scene. The appellate court found
the evidence thus obtained admissible. It reasoned that the initial, emergency entry was lawful and
the subsequent entry was "a valid continuation of the initial search." Id. at 175. The court did point
out that, at the time of the subsequent entry, the husband had not then been found and could have
been a victim, rather than the shooter. But it also agreed that the activities during the subsequent
entry were lawful administrative duties incidental to the initial entry. Id. While we wonder whether
in Shoaf the absence of the husband provided some continuing exigency which justified the
subsequent entry to catalogue those items of evidence in plain view, we agree that the subsequent
entry  did  not  further  intrude  into  the  protected  zone  of  privacy  of  the  surviving  homeowner,
Mr. Shoaf. In other words, the seizures during the subsequent entry did not come from a more
extensive search beyond the scope of the plain view of the officers initially entering the premises
during the exigency, and were therefore lawful.
            To the same effect is an instructive 1995 opinion on point from the First Court of Appeals. 
See Forbes v. State, No. 01-94-00428-CR, 1995 Tex. App. LEXIS 873 (Tex. App.—Houston [1st
Dist.] Apr. 27,1995) (not designated for publication) (vacated & remanded on other grounds), see
1995 Tex. App. LEXIS 2872 (Tex. App.—Houston [1st Dist.] Nov. 15, 1995, pet ref'd) (not
designated for publication)). Though Forbes is not authority, we find it helpful because of its
reasoning and persuasive effect. The concept there articulated is appealing: once the privacy of a
residence has lawfully been invaded during an exigency, it makes no sense to require a warrant for
other officers to enter and complete what officers on the scene could have properly done. And in
recognizing the appeal of that concept, we also recognize the vital importance of clearly maintaining
the distinction between seizure of evidence in plain view—which is constitutionally
permissible—and a new, more intrusive search—which is impermissible.
We do not question the right of the police to respond to emergency situations.
Numerous state and federal cases have recognized that the Fourth Amendment does
not bar police officers from making warrantless entries and searches when they
reasonably believe that a person within is in need of immediate aid. Similarly, when
the police come upon the scene of a homicide they may make a prompt warrantless
search of the area to see if there are other victims or if a killer is still on the premises.
Cf. Michigan v. Tyler, supra, at 509–510. "The need to protect or preserve life or
avoid serious injury is justification for what would be otherwise illegal absent an
exigency or emergency." Wayne v. United States, 115 U. S. App. D. C. 234, 241, 318
F.2d 205, 212 (opinion of Burger, J.). And the police may seize any evidence that
is  in  plain  view  during  the  course  of  their  legitimate  emergency  activities. 
Michigan v. Tyler, supra, at 509–510; Coolidge v. New Hampshire, 403 U.S., at
465–466 . . . .
 
But a warrantless search must be "strictly circumscribed by the exigencies which
justify its initiation," Terry v. Ohio, 392 U.S., at 25–26 . . . .
Mincey, 437 U.S. at 392–93 (footnotes omitted). A later warrantless search of private property,
detached from an earlier lawful entry or exigency, cannot support admission of the later-discovered
evidence. Mich. v. Tyler, 436 U.S. 499 (1978).
            The United States Supreme Court cases of Michigan v. Clifford and Michigan v. Tyler are
instructive on the admissibility of evidence seized during the third entry into the Johnson home. See
Mich. v. Clifford, 464 U.S. 287, 296 (1984); Tyler, 436 U.S. at 511. Tyler upheld a warrantless
search for potentially dangerous hot spots in a burned furniture store which search had begun as the
final flames were being doused. The search had been temporarily suspended because of smoke and
darkness and had been resumed at dawn. The court in Tyler determined that the dawn search was
nothing more than a continuation of the lawful search for current fire danger. See Tyler, 436 U.S.
at 511. Clifford, by contrast, held inadmissible certain evidence discovered in a partially burned
home during entry into the home after the emergency was over. See Clifford, 464 U.S. at 298–99.
            We believe this issue is best analyzed focusing, not on the fact of the subsequent entry, but
on the nature of the rights sought to be protected by the Fourth Amendment, and clearly separating
what constituted a search from what constituted a seizure. From that perspective, it becomes clear
that subsequent seizure of evidence already discovered during an exigent search does not further
invade privacy rights and therefore is constitutionally permissible.
[W]hen a police officer has [lawfully] observed an object in "plain view," the owner's
remaining interests in the object are merely those of possession and ownership, see
Coolidge v. New Hampshire, [403 U.S. 443,] 515 . . . (White, J., dissenting). 
Likewise, it reflects the fact that requiring police to obtain a warrant once they have
[lawfully] obtained a first-hand perception of contraband, stolen property, or
incriminating evidence generally would be a "needless inconvenience," 403 U.S. at
468, that might involve danger to the police and public. Ibid. We have said
previously that "the permissibility of a particular law enforcement practice is judged
by balancing its intrusion on . . . Fourth Amendment interests against its promotion
of legitimate governmental interests."

Tex. v. Brown, 460 U.S. 730, 739 (1983).
            While the entrance to a home is to be carefully guarded, the act of crossing the threshold into
the home does not necessarily control the analysis; rather, the question is the discovering officer's
right to be where he or she is when the object is seen in "plain view." See Washington v. Chrisman,
455 U.S. 1, 8–9 (1982) (officer had right to stay at arrested individual's "elbow," so officer's presence
inside or outside of dormitory room's threshold while individual was inside room, from which officer
saw drug-related items in plain view, was immaterial). Also, the right to be present is not necessarily
limited to just the officer or officers who actually dealt with the exigency allowing the original entry,
but may extend even to officers that have a different function from the original entrants. Tyler, 436
U.S. 499 (firefighters on premises to extinguish fire, different fire department official entered and
seized visible evidence).
            Precedents from other states are consistent with allowing a subsequent seizure of evidence
lawfully discovered earlier. See Alward v. Nev., 912 P.2d 243, 250 (Nev. 1996) (evidence in plain
view during officers' initial emergency intrusion into tent were lawfully seized, but not items
discovered during general search); Ore. v. Anderson, 599 P.2d 1225, 1228–30 (Or. Ct. App. 1979)
(approving "fruit" of subsequent entry about three hours after original entry, by officers responding
to initial shooting report, with purpose "to pictorially preserve the crime scene prior to removal of
the victim and to prevent accidental or intentional destruction of evidence").
            Therefore, we hold that the subsequent seizure, by deputies, of evidence in plain view during
Jones' original emergency sweep of the interior of the home was constitutionally permissible, and
the evidence thus obtained was lawfully admitted. This holding, however, requires us to examine
whether any challenged evidence was not in plain view during the first two entries, but was instead
discovered during a search during the third entry. Any such evidence was erroneously admitted.
            c. Little Evidence Was Inadmissible
            A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of
discretion standard. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). The general
rule is that an appellate court should afford almost total deference to a trial court's determination of
the historical facts supported by the record, especially when the trial court's fact-findings are based
on an evaluation of credibility and demeanor. Id. At a suppression hearing, the trial court is the
exclusive trier of fact and judge of the credibility of the witnesses. Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997). We are also to afford such deference to a trial court's ruling on
"application of law to fact questions," also known as "mixed questions of law and fact," if the
resolution of those questions turns on an evaluation of credibility and demeanor. Villarreal, 935
S.W.2d at 138. We may review de novo those questions not turning on credibility and demeanor. 
Id.
            In this case, however, the evidence is uncontroverted, and there are no factual issues to
decide—only the application of the law to the facts as set out above. Under these facts, to the extent
the deputies searched the home's interior, there is no viable exception to the constitutional
requirement that a search warrant be obtained. We conclude the failure to suppress some of the
disputed evidence, as set out below, was error.
            Certainly, most of the evidence was properly admitted. No objection was made to the
admission of State's Exhibits 1 (audiotape of 9-1-1 call), 18 (videotape of interview with Johnson),
20 (autopsy identification photograph of victim), 21 (autopsy report), 23 (ballistics report on the
pistol), or 24 (trace evidence report on certain exterior surfaces of the deceased). Worth special note
are State's Exhibits 23 and 24—derived from the investigation during the officers' third entry into
the residence—which were admitted after Johnson's counsel affirmatively said he had "No objection"
to their admission. 
            But, clearly "seized" during the third entry and challenged by Johnson's continuing objection
were State's Exhibits 2 through 8, 10 through 12, 19, and 25, photographs taken by Spann inside the
house during the third entry. Also obtained during the third entry and subject to Johnson's objection
were State's Exhibits 9 (diagram of home interior showing locations of body, pistol, spent shell
casing, and blood deposits) and 13 (the pistol). After a thorough review of the record, we conclude
the trial court was within its discretion in finding that most of this evidence had been in plain view
during Jones' emergency sweep of the home and was thus lawfully seized during the third entry,



except for the spent shell casing and evidence flowing from that casing. The shell casing was on the
living room floor between a chair and the wall, not in Jones' plain view during his emergency sweep,
and thus appears to have been discovered during the sheriff's deputies' investigation. That discovery
was the result of a search that was broader than the scope of Jones' plain view. Therefore, the spent
shell casing—and the evidence arising from that—should have been suppressed in response to
Johnson's objections.
            State's Exhibit 9, the diagram of the home's floor plan, showing where the shell casing was
discovered by deputies, should not have been admitted without redacting the shell casing references. 
Also, those portions of the testimony of Copeland which were based on deputies' observations of the
shell casing during the third entry—consisting of a few relatively minor parts of his
testimony—should have been excluded.


 State's Exhibit 23, on the other hand, the firearm report
which included a reference to the spent shell casing, would have been subject to exclusion or
redaction, but was properly admitted when defense counsel affirmatively said, "No objection" to its
admission.


 
            d. Admitting Inadmissible Evidence Was Harmless
            Under Texas law, having concluded the court should have at least in part granted Johnson's
motion to suppress, we are bound to conduct a harm analysis. See Tex. R. App. P. 44.2(a). Since
this admissibility issue deals with constitutional error, we must reverse unless we determine beyond
a reasonable doubt that the error did not contribute to the conviction or punishment. Atkins v. State,
951 S.W.2d 787, 797 (Tex. Crim. App. 1997). We determine beyond a reasonable doubt that the
shell casing could have had no meaningful impact on the jury findings.
            Our analysis on this issue is controlled by the facts. Johnson admitted shooting her husband. 
Evidence about the condition of the victim's body, and that he was shot in the back, was admitted
without objection. There was also evidence about telephone conversations between the two of them
and persons on their way to visit them shortly before the shooting, about the remarkable quantity of
alcohol in the decedent's blood, about the Johnsons' relationship over a period of several years, and
about their argument that night.
            The only ultimate issue before the jury was whether the shooting was in self-defense. The
lawful evidence showed the location and condition of the body, the pistol, the blood deposits, the
photographic display of the scene of the shooting, the autopsy detailing the angle of the gunshot
wound, the trace evidence report showing gunshot residue on the decedent's clothing, and more. The
improper evidence was simply where the spent shell casing came to rest behind a chair. That, in
reality, provided nothing other than a basis for speculation about the location and orientation of the
gun when the fatal shot was fired. Under these facts, we find the error to be harmless beyond a
reasonable doubt. Therefore, we overrule this point of error.
2. Trial Court Correctly Overruled Motion for Directed Verdict
            Johnson also contends the court erred by failing to grant her motion for a directed verdict. 
A point of error complaining about a trial court's failure to grant a motion for directed verdict is a
challenge to the legal sufficiency of the evidence. Williams v. State, 937 S.W.2d 479, 482 (Tex.
Crim. App. 1996); Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993). When evaluating
the legal sufficiency of the evidence, we should view the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App.
2003). When a defendant challenges the legal sufficiency of the evidence to support rejection of a
defense such as self-defense, we examine all of the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential elements of the offense
and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. 
Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); Bowen v. State, 117 S.W.3d 291, 298
(Tex. App.—Fort Worth 2003, pet. granted).
            In applying a legal sufficiency review, we are to consider all evidence which the jury was
permitted, whether rightly or wrongly, to consider. Moff v. State, 131 S.W.3d 485, 488 (Tex. Crim.
App. 2004); Beltran v. State, 728 S.W.2d 382, 389 (Tex. Crim. App. 1987).
            In this case, Johnson points to evidence from an audiotape introduced by the State of her
while in the squad car saying, "[H]e beat me, he beat me, he beat me. I couldn't let him do that to
me again." She points out that the State's evidence showed that Mr. Johnson's blood alcohol level
was 0.21, that officers testified Johnson had an injury to her arm, that Johnson and had contacted
police at times over a period of several years complaining Mr. Johnson had threatened her—stating
in one of the reports he had assaulted her in 1999, but she had not reported it at that time. 
            The evidence also shows that the victim was shot one time in the back, and photographs
showing the location of the body were presented to the jury, along with photographs of the body and
its location in relation to the various pieces of furniture and the few blood splatters on the chair. The
State's theory was that Johnson came up behind the victim while he was in his chair and shot him
in the back, presumably while he was bending forward or starting to get up, and that he then fell
forward onto the floor. The defense theory was that the decedent had risen from the chair and was
coming toward Johnson and that, as she was moving away from him, she pointed the pistol blindly
behind herself and fired. The evidence presented to the jury is not entirely one-sided in favor of
Johnson. The State presented evidence before the motion for a directed verdict was urged that could
be taken to support the State's theory of the case, which would exclude Johnson's defensive theory.
            Therefore, the legal sufficiency challenge fails because evidence exists that can be used by
a rational trier of fact to support the State's theory of the case.
            We affirm the judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          October 22, 2004
Date Decided:             March 3, 2005

Publish