In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00042-CR


______________________________




DOMINIC KEVIN WARD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 32069-B




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 After the trial court denied his motion to suppress evidence, Dominic Kevin Ward
pled guilty to the offense of felon in possession of a firearm. See Tex. Pen. Code Ann.
§ 46.04 (Vernon Supp. 2006). The trial court assessed Ward's punishment at five years'
imprisonment. Ward now appeals, contending the trial court erred by denying his motion
to suppress evidence because the State's search warrant was not supported by probable
cause. Ward also contends the evidence is insufficient to show he had possession or
ownership of the firearms at issue. We overrule both points of error and affirm the trial
court's judgment.

I. Factual and Procedural Background

 At the hearing on Ward's motion to suppress, Officer Chad Walls of the Gregg
County Sheriff's Department testified that, on September 8, 2004, he went to an apartment
located in Longview to serve a felony warrant for Michelle Gibson, whom police believed
to be living at the apartment. A woman opened the apartment door after Walls and Deputy
Mark Polk knocked. Walls looked in the apartment and saw Ward inside. Ward then gave
the deputies consent to enter the apartment. Walls testified that this consent was not
obtained through force, threat, or coercion. Walls then testified that Ward said he lived
there with his girlfriend. 

 The deputies did not find Gibson inside the apartment, but they did see two firearms
in plain view while searching for Gibson. Walls described these guns as a silver and black
handgun (which had been seen lying on a bed) and a black handgun (which apparently
had been seen inside an open "cubby hole" of the computer table). The deputies later
learned from Ward that he slept in the bed on which the silver and black handgun had
been seen. Ward also admitted to the officers that he had been given the two handguns
by a friend and further informed the officers that the gun seen on the bed had a problem
with its firing pin. The officers remained inside the apartment for about ten or fifteen
minutes and then left. 

 Walls subsequently ran a background check on Ward using the name, date of birth,
and other information provided by Ward during the time the officers spent in the apartment. 
This background check revealed Ward had a prior felony conviction within the previous five
years. Officers then suspected Ward was in possession of a firearm in violation of Article
46.04 of the Texas Penal Code. Acting on this new information, Walls sought and
obtained a search and arrest warrant. The warrant, issued September 9, 2004, authorized
law enforcement officers

to enter the suspected place, vehicles, and premises described in said
affidavit, to wit: Apartment #228 of the Hidden Hills Apartments, said
apartment is located at 614 Gilmer Road, Longview, Gregg County, Texas,
and sits near the southeast intersection of Gilmer (Hwy 300) and Fairmont
Roads.

 At said places you shall search for and, if same be found, seize and
bring before me the property described in the affidavit, to-wit: Firearms, and
further, you are commanded to arrest and bring before me each suspected
party named in said affidavit, to wit:

 Dominic Kevin Ward, a white male born [in 1980] for the offense of
Unlawful Possession of Firearm.

The affidavit attached to Walls' search warrant application states, among other things, that
Walls believed Ward, 

 on or about the 8th day of September, 2004, did then and there, having been
convicted of the felony offense of Burglary of a Habitation, in cause number
26175-B in the 124th District Court of Gregg County, Texas, in a case on the
docket of said Court and entitled The State of Texas vs. Dominic Kevin
Ward, intentionally or knowingly possess a firearm before the fifth
anniversary of the defendant's release from supervision under parole
following conviction of said felony . . . . 


The affidavit further details Ward's observations on the previous day while trying to serve
the arrest warrant for Gibson. 

 When the officers returned September 9, 2004, to execute the newly obtained
search and arrest warrant, they again found Ward at the apartment. The officers took
Ward into custody and proceeded to search the residence, as was authorized by the
warrant. The guns the officers had seen in plain view on the previous day were no longer
openly visible. Nevertheless, police eventually located those two guns, along with two
more: a .30-30 rifle and a shotgun. The officers also found bullets for some of the guns. 

II. Standard of Review

 The standard of review for the trial court's ruling on a motion to suppress is abuse
of discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); Freeman v.
State, 62 S.W.3d 883 (Tex. App.--Texarkana 2001, pet. ref'd). In a suppression hearing,
the trial court is the sole trier of fact and judge of the witnesses' credibility and the weight
to be given their testimony. The evidence should be viewed in the light most favorable to
the trial court's ruling. State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999);
Freeman, 62 S.W.3d at 886. We should afford almost total deference to the trial court's
determination of historical facts that the record supports, especially when the fact-findings
are based on an evaluation of the witnesses' credibility and demeanor. State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000); Freeman, 62 S.W.3d at 886. However, we
review de novo the trial court's application of the law of search and seizure to the facts
adduced at trial. Ross, 32 S.W.3d at 856. Further, when the trial court does not file
findings of fact and conclusions of law--as is the case here (1)--we should assume that the
trial court made implicit findings that support its ruling, so long as those implied findings are
supported by the record. Id. at 855. If the trial court's decision is correct on any theory of
law applicable to the case, we should affirm the decision. Id. at 855-56.

III. Analysis of Issue Presented

 Ward argues on appeal that, once the police saw Gibson was not present in the first
room in which the police entered, the officers should then have immediately ended their
search and left. Because they did not, argues Ward, the subsequent search of that
apartment--and the evidence that search revealed--was obtained in violation of Ward's
Fourth Amendment protections against unreasonable searches and seizures. We
conclude Ward is incorrect for several reasons.

 Consent is one exception to the Fourth Amendment's warrant requirement. Laney
v. State, 117 S.W.3d 854, 863 (Tex. Crim. App. 2003) (Meyers, J., concurring) (citing
Schneckloth v. Bustamonte, 412 U.S. 218 (1973)). The evidence at trial showed Ward
consented to the officers' entry September 8. The record contains no evidence Ward
either later withdrew that consent or attempted to limit the officers' entry to any specific
area of the apartment. Thus, the trial court could have properly concluded Ward's grant
of consent was a conveyance of permission to the police to enter the entirety of the
apartment dwelling, without limitation. If such was the trial court's conclusion, and such a
conclusion would have been supported by the evidence adduced in the court below, Walls'
entry into Ward's bedroom was certainly within the scope of Ward's initial consent to police
entry into the apartment and, therefore, did not offend the strictures of the Fourth
Amendment.

 Because the officers' entry of Ward's bedroom September 8, 2004, did not offend
the Constitution, it follows that any information they gathered from their plain sight
observations may subsequently form the basis of probable cause. Cf. Johnson v. State,
161 S.W.3d 176, 182 (Tex. App.--Texarkana 2005, pet. granted) ("The plain view
exception requires that '(1) law enforcement officials have a right to be where they are, and
(2) it be immediately apparent that the item seized constitutes evidence.'"). That is what
happened in this case: Deputy Walls used his observations from September 8 regarding
Ward's admitted possession of two firearms to obtain a warrant September 9, which police
then executed later that day. 

 Ward does not argue in his brief to this Court that neither the affidavit in support of
the search warrant application nor the search warrant issued September 9, 2004, is
defective in any manner. Instead, Ward's arguments on appeal concern only the propriety
of the events justifying Walls' intrusion into Ward's bedroom September 8. As we have
already concluded that the police did not violate Ward's constitutional rights September 8,
2004, the evidence obtained during that search was properly used to provide probable
cause for the September 9 search warrant. We, therefore, conclude the trial court properly
overruled Ward's motion to suppress.

IV. Sufficiency of the Evidence to Show Possession

 Ward also contends the evidence is insufficient to show he had possession of the
firearms. In reviewing the legal sufficiency of the evidence, we view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review,
we view all the evidence in a neutral light and determine whether the evidence supporting
the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if
evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt
standard could not have been met. Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim.
App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App. 2004)).

 In this case, Walls testified that Ward admitted a friend had given him the guns. 
Such testimony demonstrates both possession and ownership, demonstrating the
necessary, critical link between Ward and the guns at issue. The firearms were also found
inside Ward's apartment, on Ward's bed, at a time when Ward was in the home. Ward
also told the officers that one of the weapon's firing pins was inoperable, a statement
suggesting a more than casual acquaintance with the weapon. Ward did not testify in this
case during the hearing on his motion to suppress, and he presented no evidence contrary
to Walls' testimony on this issue. Nor is there any suggestion in the record that police
coerced Ward into confessing about his possession of the firearms. Accordingly, absent
any contrary evidence on this issue, we conclude the evidence is both factually and legally
sufficient to show Ward possessed the firearms, as alleged by the State.

V. Conclusion

 We overrule Ward's two points of error and affirm the trial court's judgment.



 Donald R. Ross

 Justice


Date Submitted: October 12, 2006

Date Decided: October 13, 2006


Do Not Publish
1. The Texas Court of Criminal Appeals has held that, "upon the request of the losing
party on a motion to suppress evidence, the trial court shall state its essential findings. By
'essential findings,' we mean that the trial court must make findings of fact and conclusions
of law adequate to provide an appellate court with a basis upon which to review the trial
court's application of the law to the facts." State v. Cullen, 195 S.W.3d 696, 699 (Tex.
Crim. App. 2006). Ward has not directed us, nor have we independently found, where he
made such request.



WhenUsed="false" Name="Medium List 1 Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00125-CR

                                                ______________________________

 

 

                                     EDWARDO MORROW,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 188th
Judicial District Court

                                                             Gregg County, Texas

                                                          Trial Court
No. 38738-A

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            A
trial to the bench led to the conviction of Edwardo Morrow for burglary of a
habitation.  Following a plea of true
to the States enhancement allegation, Morrow was sentenced by the trial court
to twenty years imprisonment.  On
appeal, he challenges the legal sufficiency of the evidence and complains the
trial court erred because there is no finding on the record that the
enhancement was found to be true.  We
affirm the trial courts judgment, as modified. 

I.          Legally Sufficient
Evidence Supported Morrows Conviction 

            A.        Standard of Review 

            In
evaluating legal sufficiency, we review all the evidence in the light most
favorable to the trial courts judgment to determine whether any rational
fact-finder could have found the essential elements of burglary of a habitation
beyond a reasonable doubt.  Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)); Hartsfield
v. State, 305 S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd).  Our rigorous legal sufficiency review focuses
on the quality of the evidence presented. 
Brooks, 323 S.W.3d at 917
(Cochran, J., concurring).  We examine
legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the
fact-finder to fairly resolve conflicts in testimony, to weigh the evidence,
and to draw reasonable inferences from basic facts to ultimate facts.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 31819); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically-correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); see also Vega v. State, 267 S.W.3d 912,
916 (Tex. Crim. App. 2008).  In order to
establish Morrow committed burglary of a habitation as alleged in the
indictment, the State was required to establish that Morrow, without effective
consent of the owner, entered[1]
a building or habitation with the intent to assault Lorie Hutzelman.  Tex.
Penal Code Ann. § 22.01 (Vernon Supp. 2010), § 30.02(a)(3) (Vernon
2003).  

            B.        The Testimony 

            On the evening of
the incident giving rise to the charges, it appears that Morrow and Hutzelman
were at Morrows home, fighting one another. 
During a momentary lull in the physical activities, Morrow called Hutzelmans
grandmother, Betty Ann Solis, on the telephone and told her, You need to come
pick up your granddaughter.  Solis
telephoned her daughter, Virginia Marie McWhorter (Hutzelmans mother), to
deliver news of the volatile situation and then drove McWhorter and herself to
Morrows home to remove Hutzelman from the conflict.  Solis testified,

When I got there, my granddaughter opened the car
. . . and got in.  And as she got in,
[Morrow] jumped in on top of her and was beating her in the head, just beating
her, laying on top of her and beating her. . . . And my daughter and I both got
out of the car, we went around to where my granddaughter had got in.  And his feet was hanging out of the car, and
we pulled him off of her with his feet. 
Well, when I pulled him off, he knocked me to the ground.  I got back up. . . .  He got back down on [Hutzelman] and started
beating on her again. . . .  And we
pulled him off again. . . . he run in the house and got a
telephone.  And he come back out and he
beat [McWhorter] with it, beat her all over in the head, and she had to have
stitches. I mean, he just kept beating her with that telephone.  

 

After McWhorter and Hutzelman
were able to scramble into the car, Solis drove away as Morrow was running up
by the car hitting my car with the telephone. 


            As
Solis drove to the hospital, she called the police.  McWhorter had suffered a wound to her head,
which required four stitches, and Hutzelman suffered bruises to her eye,
forehead, and arms.  After McWhorter and
Hutzelman received medical treatment, Solis took them to their apartment.[2]  

            Later
that evening, McWhorter and Hutzelman heard a knock on the door.  McWhorter, peeking out of the living room
window, saw Morrow sitting in his vehicle, but did not recognize the person
knocking; she refused to open the door. 
The unidentified person went to the car in which Morrow had been seen
sitting.  This was followed shortly
thereafter by Morrow pounding on the door trying to get in while he was
angrily hollering and cussing. 

            Hutzelman,
believing Morrow would have killed me and my mom, called the police.
Hutzelman and McWhorter testified they heard the living room window break
during the time that Hutzelman was speaking on the telephone to the police
dispatcher.  Although neither saw the
window breaking, and Hutzelman testified she did not see Morrow come through
the window, McWhorter testified that by the time 9-1-1 got to our house, he
had one leg in the window.  Solis
claimed she received a telephone call from Hutzelman that [Morrow] had been
down there.  He broke the window; he was
climbing in their window.  He said he was
going to kill Lorie. 

            Officer
Alejandro Castillo was the first policeman to respond.  He observed Morrow walking down the stairway
that led up to [McWhorters and Hutzelmans] apartment, and noticed that
Morrows right leg and shin area were bloody. 
Morrow claimed he cut himself walking through some bushes, denied
breaking the window, and stated he was knocking on the door of his daughters apartment
(which was adjacent to the apartment occupied by McWhorter and Hutzelman).  

            Morrow
called his pastor, his uncle, and his nephew to testify in his defense.  The pastor, Russell Martin, stated that Morrow
had performed at a church function on the evening of the incident.  The uncle, Arthur Lewis Murphy, claimed that
he was on the porch of Morrows home when Solis and McWhorter came to pick up Hutzelman
and that he observed McWhorter jump on Morrows back as Solis was hitting
him.  According to Murphy, Morrow hit
McWhorter on the head only to make [her] let him go.  The nephew, Eli Rodney Fisher, testified that
although he did not see McWhorter jump on Morrow, he did observe her as she
grabbed him from behind, at which point Morrow swung his arm and hit her
unintentionally.  Fisher claimed that
Solis did not touch Morrow.  Fishers
account of the events at Morrows home bore little resemblance to the account
rendered by Murphy.  

            C.        Analysis 


            Morrow
lodges two specific challenges with respect to legal sufficiency:  that there was no entry into the habitation
and that there is insufficient evidence on any intent to commit an assault. 

            We
measure the sufficiency of the evidence by the elements of the offense as
defined in a hypothetically-correct jury charge.  Such a charge is one that accurately sets out
the law, is authorized by the indictment, does not unnecessarily increase the
States burden of proof or unnecessarily restrict the States theories of
liability, and adequately describes the particular offense for which the
defendant was tried.  Malik, 953 S.W.2d at 240. 

            Entry
into a habitation may be established by inferences drawn from circumstantial
evidence.  Martinez v. State, 304 S.W.3d 642, 660 (Tex. App.Amarillo 2010,
pet. refd) (citing Lopez v. State,
884 S.W.2d 918, 921 (Tex. App.Austin 1994, pet. refd)).  The trial court was the sole judge of
credibility of witnesses and weight assigned to their testimony.  According to the testimony of McWhorter and
Hutzelman, Morrow was hollering, cursing, and pounding on the door trying
to get in.  Shortly thereafter,
McWhorter and Hutzelman heard the window break. 
McWhorter testified that by the time 9-1-1 got to our house, [Morrow]
had one leg in the window.  Officer
Castillo found Morrow at the scene with a bloodied right leg.  We conclude the trial courts determination
that this evidence established that Morrow had entered was a reasonable and
rational inference to draw.  

            Next,
we examine Morrows intent to commit assault. 
A person commits assault if he intentionally, knowingly, or recklessly
threatens another with imminent bodily injury. 
Tex. Penal Code Ann. §
22.01(a)(1), (2).  In determining whether
Morrow attempted to threaten Hutzelman with imminent bodily injury, the crucial
inquiry is whether he acted in such a manner as would, under the circumstances,
portend an immediate threat of danger to a person of reasonable
sensibility.  Olivas v. State, 203 S.W.3d 341, 347 (Tex. Crim. App. 2006).  Intent can be inferred from circumstantial
evidence such as the persons acts, words, and conduct because [o]nes acts
are generally reliable circumstantial evidence of ones intent[.]  Laster
v. State, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009); Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).  The trial judge could consider events
occurring before, during, and after the commission of the offense, and could
rely on actions of the defendant which show an understanding and common design
to do the prohibited act.  Guevara, 152 S.W.3d at 49; see McIntosh v. State,
297 S.W.3d 536, 541 (Tex. App.Houston [1st Dist.] 2009, pet. refd) (upholding
legal sufficiency of conviction of burglary with intent to assault where
defendant broke into window of victims apartment, broke into bathroom where
victim was hiding, and had assaulted victim in the past).[3]

            Here,
the trial judge heard testimony that Morrow had previously that same day fought
with Hutzelman (jumping on top of her and beating her), had assaulted her
mother, and had shoved or pushed her grandmother.[4]  Hutzelman and McWhorter required medical
attention for their injuries.  This was
followed later that evening by Morrow appearing at the victims residence,
hollering, cussing, and angrily pounding on their door.  There was testimony that he entered the
apartment by breaking in through the window; the intrusion of his leg through
the window was sufficient to show entry.[5]  The court could find these actions would
place a reasonable person in immediate fear of bodily harm.  Indeed, Hutzelman believed he was there to
kill her and her mother, and Solis testified that McWhorter stated, He said he
was going to kill [Hutzelman]. 

            Because
we find that a rational fact-finder could have found the essential elements of
burglary of a habitation with intent to commit assault beyond a reasonable
doubt, we find the evidence legally sufficient to support Morrows
conviction.  This point of error is
overruled. 

II.        Morrows
Offense Was Punishable Within the First-Degree Range

            Next, Morrow does not complain that
the sentence is illegal.[6]  Rather, Morrow argues he could not be
sentenced within the range of punishment for a first-degree felony[7]
absent a finding of true on the record as to the enhancement allegation,
especially since the written judgment contains the notation N/A in the space
for Plea to 1st Enhancement Paragraph. 


            As
a prerequisite to presenting a complaint for appellate review, the record must
show that:  (1) the complaint was made to
the trial court by a timely request, objection, or motion . . . .  Tex. R.
App. P. 33.1(a)(1).  Because
Morrow did not raise this issue to the trial court, he has failed to preserve
the issue for our review.  Newby v. State, 169 S.W.3d 413, 416
(Tex. App.Texarkana 2005, pet. refd) (citing Garner v. State, 858 S.W.2d 656, 659 (Tex. App.Fort Worth 1993,
pet. refd) (finding appellants assertion that the trial court erred by not
orally reading the two enhancement paragraphs or making an oral finding thereon
during bench trial on punishment was not preserved)). 

            Nevertheless,
while it is better practice for the trial court to make an oral pronouncement
regarding its findings on punishment enhancement allegations, a trial court
does not err when it overlooks making that pronouncement, especially when the
issue of sentencing is submitted to the court rather than a jury.  Id.  When the trial court alone assesses a
defendants punishment, the court is not required to read the enhancement
paragraphs or the findings to the defendant. 
Garner, 858 S.W.2d at 659 (citing
Reed v. State, 500 S.W.2d 497, 499
(Tex. Crim. App. 1973)); Seeker v. State,
186 S.W.3d 36, 39 (Tex. App.Houston [1st Dist.] 2005, pet. refd).  Instead, the finding is implied.  See Almand
v. State, 536 S.W.2d 377, 379 (Tex. Crim. App. 1976) (It is true that the
court did not make an express finding as it should have as to the prior
conviction, but it is obvious from what has been said that the court found from
the undisputed evidence that there was a prior conviction and with the
agreement of the parties assessed punishment as a second degree felony.); Garner, 858 S.W.2d at 65960 (implying a
finding of true to the enhancement where trial court assessed punishment at a
range above punishment without enhancement). 

            A
prior conviction may be used to enhance punishment if it is pled in some form,
but it need not be pled in the indictment. 
Villescas v. State, 189 S.W.3d
290, 292 (Tex. Crim. App. 2006) (citing Brooks
v. State, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997)).  When seeking to enhance punishment, it is the
States burden to show that the prior conviction was final under the law and
that appellant was the person previously convicted of that offense.  Harvey
v. State, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981).  However, when a defendant pleads true or
guilty to the enhancement allegations, he satisfies the States burden of
proof.  Ex parte Sewell, 742 S.W.2d 393, 396 (Tex. Crim. App. 1987); Harvey, 611 S.W.2d at 111; Dinn v. State, 570 S.W.2d 910, 915 (Tex.
Crim. App. [Panel Op.] 1978) (when defendant pleads true to enhancement
paragraph, States burden of proof is satisfied as plea of true is sufficient
proof).  When enhancement paragraphs are
proven, punishment at the enhanced level is mandatory.  See Wilson
v. State, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984).  

            Before
Morrow pled true to the enhancement, the trial court admonished, Do you
understand that if you plead true, I have to find that allegation to be true,
and it does raise the range of punishment from 5 years on the low end up to 99
years or life on the high end.  The court
again clarified, If you plead true, I would find the allegation to be true.  Morrow indicated his understanding, and
centered his closing arguments upon the assumption that the court found the
enhancement true and that the range of punishment was as the court
admonished.  

            Had
Morrow preserved error upon this issue, we would nevertheless find that the
record reflected an implied finding of true to the enhancement paragraph based
on Morrows plea of true.  

            We
overrule Morrows last point of error.  

III.       Modification

            The Texas Rules of Appellate
Procedure give this Court authority to modify judgments to make the record
speak the truth when the matter has been called to our attention by any
source.  Tex. R. App. P. 43.2; French v. State, 830 S.W.2d 607, 609 (Tex.
Crim. App. 1992); Rhoten v. State,
299 S.W.3d 349, 356 (Tex. App.Texarkana 2009, no pet.).  

            Burglary
of a habitation is a second-degree felony except in circumstances not
applicable here.  Tex. Penal Code Ann. § 30.02(c)(2) (Vernon 2003).  If it is shown at trial for a second-degree
felony that the defendant had previously been convicted of another felony,
punishment can fall within the range prescribed for a first-degree felony.  Tex.
Penal Code Ann. § 12.42(b) (Vernon Supp. 2010).  This procedure was used to enhance Morrows
punishment range.  However, this
procedure does not increase the level of the original offense.  

            The
State agrees that [t]he judgment described the offense as a first degree
felony, and should have described a second degree felony.  The State also contends:


 The judgment recites
 that the offense was Burglary of a Habitation Intend Other Felony; and
 should read Burglary of a Habitation, with Intent to Assault.  
 The judgment refers
 to 30.02(d) (other felony) of the Texas Penal Code, instead of 30.02 (ac)
 (burglary of a habitation.)[.]
 The plea to the
 first enhancement paragraph should read, True rather than N/A.
 The finding on the
 first enhancement paragraph is listed as N/A.  The Trial Court stated, before the
 Appellant entered his plea to the enhancement allegation, If you plead
 true, I would find the allegation to be true.  On the basis of the Judges statement,
 the State avers . . . the judgment should be reformed to conform to the
 intention of the Trial Court.[8]


 

            We
find the States suggested modification of the trial courts judgment is
necessary to make the record speak the truth. 
Tex. R. App. P. 43.2; French, 830 S.W.2d at 609; Battle v. State, No. 06-07-00148-CR,
2008 WL 482343, at *3 (Tex. App.Texarkana Feb. 25, 2008, no pet.) (mem. op., not
designated for publication) (modifying judgment to reflect proper statute under
which defendant should have been convicted); Gray v. State, 628 S.W.2d 228, 233 (Tex. App.Corpus Christi 1982,
pet. refd).  

            We
hereby modify the trial courts judgment to reflect conviction of burglary of a
habitation, with intent to assault, under Section 30.02(a-c) of the Texas Penal
Code.  The degree of offense is modified
to reflect the conviction to be a second-degree felony and the plea to the
first enhancement, as well as the courts finding, is modified to True.




 

IV.       CONCLUSION

            We
affirm the trial courts judgment, as modified. 


 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          March 10, 2011

Date Decided:             March 15, 2011

 

Do Not Publish

 

 











[1]Enter means to intrude any part
of the body.  Tex. Penal Code Ann. § 30.02(b)(1) (Vernon 2003). 





[2]McWhorter and Hutzelman lived in
apartment number 508 in the same apartment complex where Solis resided. 





[3]Morrow claims that because he and
Ms. Hutzelman had the type of relationship that continues despite conflicts,
evidence of intent to assault was insufficient. 
In support of this, he cites to love letters sent by Hutzelman to Morrow
and to telephone conversations between Morrow and Hutzelman, both things
occurring after his incarceration. 
Hutzelman testified that although she still loved Morrow, she was afraid
of him.  The nature of the somewhat
bizarre relationship between the two is not the pertinent issue; the proper
inquiry, rather, is whether Morrow possessed the intention to assault Hutzelman
at the time of the unlawful entry. 

 





[4]The trial court was free to
believe the testimony of Solis, McWhorter, and Hutzelman, while disbelieving Murphys
and Fishers inconsistent testimony.  See Lancon v. State, 253 S.W.3d 699, 707
(Tex. Crim. App. 2008).  Further, even if
the trial court found Martins testimony that Morrow performed in church that
night to be true, it may not have been inconsistent with a finding that Morrow
had done all that the States witnesses said he did; Morrow could have been
performing while McWhorter and Hutzelman were seeking medical attention.   





[5]Tex.
Penal Code Ann. §
30.02(b)(1). 

 





[6]Morrow acknowledges that the
trial courts sentence of twenty years imprisonment was authorized under
conviction for burglary of a habitation, even without a finding of true to the
enhancement allegation.

 





[7]Morrow also complains he could
not be convicted of a first-degree felony offense.  We agree. 
As indicated below, the trial courts judgment is modified to reflect
conviction of a second-degree felony. 





[8]It is apparent that the trial
court believed Morrows plea of true could be used as an indication that he
attempted to commit felony assault, an allegation not contained within the
States indictment.  With respect to the
degree of offense for burglary of a habitation, the Texas Penal Code states:

 

                (c)           Except as provided in Subsection (d),
an offense under this section is a:

                                (1)           state jail felony if committed in a building other than a
habitation; or

                                (2)           felony of the second degree if
committed in a habitation.

                (d)           An offense under this section is a felony of the first
degree if:

                                (1)           the premises are a habitation; and

                (2)           any party to the offense entered the habitation with
intent to commit a felony other than felony theft or committed or attempted to
commit a felony other than felony theft.

 

Tex. Penal Code Ann. § 30.02(c)(2). 
The judgment of conviction lists the Statute for Offense as Section
30.02(d).  In order for Section 30.02(d)
to apply, Morrow must have possessed the intent to commit a felony.  

                Assault is a class A
misdemeanor, except that the offense is a felony of the third degree if the
offense is committed against a person whose relationship to or association with
the defendant is described by Sections 71.0021(b), 71.003, or 71.005, Texas
Family Code, if . . . it is shown on the trial of the offense that the
defendant has been previously convicted of an offense under this chapter,
Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11 against a person whose
relationship to or association with the defendant is described by Section
71.0021(b), 71.003, or 71.005, Family Code . . . .   Tex.
Penal Code Ann. § 22.01(b)(2)(A); Tex.
Fam. Code Ann. § 71.0021 (Vernon 2008) (defining dating relationship).  Proof that the intended assault would have
been a third-degree felony, rather than a misdemeanor, would have raised the
level of the burglary to a first-degree felony. 
This first-degree felony was not included in the indictment and the
State has not sought its application.