Jesus Torres **MARTINEZ**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 13–95–290–CR.

Court of Appeals of Texas, Corpus Christi.

May 29, 1997.

Larry Warner, Brownsville, for appellant.

Robert H. Moore, Jr., Asst. County (Crim. Dist,) Attorney, Yolanda De Leon, District Attorney, Brownsville, for appellee.

Before FEDERICO G. HINOJOSA, Jr., YANEZ and RODRIGUEZ, JJ.

## OPINION

YANEZ, Justice.

Appellant, Jesse Torres Martinez, was convicted by a jury of attempted capital murder. TEX.PENAL CODE ANN. §§ 19.03(a)(1) & 15.01(a) (Vernon 1994). The jury sentenced appellant to ninety-nine years in the Texas Department of Criminal Justice, Institutional Division. By six points of error, appellant challenges the sufficiency of the evidence, the charge of the court, and the prosecution's argument to the jury. We affirm.

On the evening of February 13, 1995, appellant, Jesus Torres Martinez, escaped from the city jail in Harlingen, Texas. Upon being notified of the escape, Harlingen police officer Shawn Ray Foist began searching for appellant, looking first in the vicinity of appellant's home, which was only a few blocks from the jail. Foist located appellant and then confronted him. Appellant fled on foot. After a chase, Foist attempted to subdue appellant, and a struggle between Foist and appellant ensued. During the struggle, Foist sustained three bullet wounds, one of which was to his back. Appellant sustained a bullet wound to his hand.

By his first and sixth points of error, appellant challenges the legal and factual sufficiency of the evidence for two aspects of the verdict—that he intended to kill Foist and that he knew Foist was a peace officer.[1]

Appellant first argues that there was no or insufficient evidence of the requisite "use" of a deadly weapon because Foist's testimony that the semi-automatic firearm in appellant's grasp "starts going off" during the struggle was not evidence that appellant intended to shoot at Foist. Appellant argues that his observations that Foist was armed and appellant was not, that Foist tackled appellant, and that appellant also was shot, "went unanswered" at trial. Appellant also suggests that Foist may have shot first at an unarmed appellant, which also would explain appellant's wound.

■ Sufficiency of the evidence is measured against the indictment as incorporated into the jury charge. *Fisher v. State*, 887 S.W.2d 49, 55 (Tex.Crim.App.1994) (citing *Benson v. State*, 661 S.W.2d 708, 715 (Tex. Crim.App.1982) (opinion on State's second motion for reh'g), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)); *Meador v. State*, 941 S.W.2d 156, 158 (Tex.App.— Corpus Christi 1996, pet. ref'd). The indictment against appellant charged that, with the specific intent to commit the offense of capital murder of Shawn Ray Foist, appellant committed an act that "amounted to more than mere preparation that tended but failed

1. Appellant's first point of error does not invoke the nomenclature typically used for a factual sufficiency challenge to the evidence. As his point of error, appellant claims the "proof failed" as to the specific intent to kill. We would take this assertion, absent a concomitant claim of "no evidence" or a request for acquittal, to constitute a factual sufficiency challenge to the evidence. In his sixth point of error, however, appellant returns to this same issue and, by his argument, challenges both the legal and factual sufficiency of the evidence on specific intent to kill. The conclusion to his brief expressly makes the legal sufficiency claim on the issue of intent to kill. We will address both the legal and factual sufficiency claims under point of error one.

to effect the commission of said offense," and that appellant knew Foist was a peace officer at the time acting in the lawful discharge of an official duty. The jury charge tracked the elements of the offense set forth in the indictment and added that the jury must find beyond a reasonable doubt that appellant intended to cause the death of Foist by intentionally or knowingly shooting him with a firearm.

■ The standard of review for challenges to the legal sufficiency of the evidence in criminal cases is that set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Clewis v. State*, 922 S.W.2d 126, 132–33 (Tex.Crim.App.1996). The *Jackson* standard inquires whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. A verdict may be set aside pursuant to a factual sufficiency challenge only if, after viewing all the evidence without the prism of "in the light most favorable to the prosecution," it is contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129; *Garza v. State*, 937 S.W.2d 569, 570 (Tex. App.—San Antonio 1996, pet. ref'd.). The jury, nevertheless, is the sole trier of fact and may judge the credibility of witnesses, reconcile conflicts in testimony, and accept or reject any evidence presented by either side to the case. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991); *Garza*, 937 S.W.2d at 570. The reviewing court may not substitute its own judgment for that of the jury's. *Clewis*, 922 S.W.2d at 133.

■ In relation to evidentiary sufficiency, a specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of the weapon's use it is reasonably apparent that death or serious bodily injury could not result. *Staley v. State*, 887 S.W.2d 885, 889 (Tex.Crim.App.1994), *cert. denied*, 514 U.S. 120, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1995); *Flanagan v. State*, 675

S.W.2d 734, 744 (Tex.Crim.App.1982); *see also Garcia v. State*, 887 S.W.2d 862, 869 (Tex.Crim.App.1994) (noting simply that the intent to kill may be inferred from the use of a deadly weapon), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). The presumption of a specific intent to kill also may be rebutted by evidence of accident. *E.g., Foster v. State*, 639 S.W.2d 691, 695 (Tex.Crim.App.1982).

■ Foist testified that in the course of chasing and attempting to subdue appellant, he never drew his weapon, which had been secured in his holster. Until he jumped a fence in pursuit of appellant, Foist noted, his hands were busy with a flashlight and a microphone. Foist testified that during the struggle, he saw in front of him a gun with the words "City of Harlingen" on it and realized he had been disarmed. He then tried to grab the gun and "blade it away" to avoid getting shot. He remembered the sparks of two shots fired about a foot and a half in front of him. He testified that no persons other than appellant and he were around when the struggle and shooting occurred. Of his three bullet wounds, Foist thought one was caused by ricochet. The wound to his back, he testified, was sustained after a pause in the gunfire.

Harlingen police officer James Johnson, who participated in the search for appellant that evening, testified that he was in the vicinity of appellant's home when he heard a total of ten shots fired—one followed by a brief pause, four shots followed by a longer pause, and then five "very fast rounds being fired as fast as you could pull the trigger." He rushed to the address where Foist had broadcasted that he was in foot-pursuit of appellant. He found Foist there, with other police officers already having reached him.

According to the testimony of Jesus Vera Mejia, who was the boyfriend of appellant's mother, Juanita Torres, appellant showed up at his mother's house that same evening, just as Mejia and Torres drove up to the house after searching for him.[2] With a gun in one hand and blood on the other, appellant di-

---

**2.** A police officer earlier had stopped at the house and informed Juanita Torres that appellant had escaped from jail.

rected Mejia and Torres to drive him to La Feria, where his grandmother lived. En route, according to Mejia, appellant did not answer questions as to what had happened, nor did he acquiesce to his mother's requests to relinquish the gun or succumb to her attempts to take it away. Fidencio Torres, appellant's uncle, testified that appellant arrived at the house where Torres and appellant's grandmother lived, carrying a handgun and looking tired and frightened. Fidencio Torres testified that appellant told him, "I got shot." He testified that, as he treated the wound, appellant twice said, "I shot a cop." When appellant said he shot a police officer, according to Torres, he was slurring his speech,[3] but also "had like a grin on his face." We hold this to be evidence sufficient for a rational trier of fact to determine beyond a reasonable doubt that appellant intended to kill Foist.

Regarding the factual sufficiency of the evidence on intent to kill, the verdict is not contrary to the overwhelming weight of the evidence. Again, Foist testified that he was disarmed by appellant, tried to keep from getting shot by appellant, sustained three bullet wounds, including one to the back after a pause in the gunfire, and that no one else was present when he and appellant engaged in the struggle. James Johnson testified that he heard ten gunshots fired in the vicinity of the struggle, with two pauses amid the shots. Fidencio Torres testified that appellant said that he shot a police officer. Appellant's argument that Foist shot appellant carries no weight for two reasons. First, in support of this theory appellant cites only the argument of counsel, which is not evidence. Second, to the extent there was evidence supporting this theory of what occurred, matters of conflicting testimony and credibility of the witnesses are within the exclusive purview of the jury as trier of fact. *Chambers,* 805 S.W.2d at 461. *Cf. Driggers v. State,* 940 S.W.2d 699, 704 (Tex.App.—Texarkana 1996, no pet. h.) (deferring to the jury where "two distinctly different versions of events" were adduced, in consideration of the "jury's job to judge the credibility of the witnesses"). Ac-

cordingly, we hold that the verdict is not so contrary to the great weight of the evidence as to be unjust. Point of error one is overruled.

■ By his sixth point, appellant contends the evidence is legally and factually insufficient for the finding that he knew Foist was a peace officer. First, appellant contends that Foist's prior knowledge of where appellant lived is insufficient evidence that appellant had been arrested by Foist in the past, such that he knew at the time of the struggle and shooting that Foist was a peace officer. Second, appellant argues that the evidence failed to show Foist was in uniform at the time of the shooting. Citing Foist's testimony, appellant claims the question of whether Foist was in uniform at the time "was never answered." Third, appellant maintains that there was no direct evidence that appellant saw any badge or heard an announcement by Foist that he was a police officer.

That appellant broke out of jail and that Foist pursued him are undisputed facts. Foist testified that, when he confronted appellant, he identified himself as a police officer and instructed appellant to get down on his belly. In relation to when he confronted appellant, Foist was asked at trial, "And you were *fully dressed* as you are right now (emphasis added)?" He answered, "Yes, sir." Foist then was asked, "The gun, the uniform, and badge?" He replied, "A different belt." The questions of whether he was "fully dressed" during the struggle as he was at trial, with gun, uniform, and badge, and Foist's affirmative replies constitute testimony that he was in uniform during the struggle with appellant. Appellant's uncle, Torres, testified that appellant twice told him, "I shot a cop." We hold the evidence is both legally and factually sufficient for the finding that appellant knew Foist was a peace officer. Point of error six is overruled.

By his second point of error, appellant alleges that the trial court improperly commented on the weight of the evidence by instructing jurors in the charge of the court

---

**3.** Torres testified that he thought appellant was drunk and told him so. Appellant told Torres that he had taken ten "roches," meaning pills.

that a city patrolman is a police officer. Recognizing that this issue was not preserved for review at trial, appellant charges that this alleged error denied him a fair and impartial trial, as evidenced by the prosecutor's reliance on this definition in its argument to the jury, and thus constitutes fundamental error. The State contends that, notwithstanding the matter of whether appellant's complaint was preserved for review, the court's instruction in the charge as to the legal status of a city patrolman was correct, and that the charge did not stipulate that Foist was a peace officer.

 The relevant portion of the charge to the jury reads: "A person commits capital murder if he murders a peace officer who is acting in the lawful discharge of an official duty and who the person knows is a peace officer. A city patrolman is a peace officer." Irrespective of whether appellant's complaint was preserved for review, a city patrolman is a peace officer. TEX.CODE CRIM.PROC.ANN. art. 2.12(3) (Vernon Supp.1997) ("police officers of an incorporated city" are peace officers); *Gilbert v. State*, 493 S.W.2d 783, 784 (Tex.Crim.App.1973) (holding that a city police officer is a peace officer); *see also Gallia v. Schreiber*, 907 S.W.2d 864, 868 (Tex.App.—Houston [1st Dist.] 1995, no pet.) (holding that part-time city patrolman is a government official). Point of error two is overruled.

By his third through fifth points of error, appellant complains of the prosecution's jury argument at the punishment phase of trial. By his third point of error, appellant claims that the prosecution's admonishment that "other punks out there" were watching what the jury would do was an improper reference to the expectations or demands of a subgroup within the community.[4] By his fourth point of error, appellant claims that the prosecution's characterization of appellant as a "punk" was prejudicial and could not have been cured by an instruction from the court. By point of error five, appellant claims that the prosecution's basis for its request for a life sentence, *i.e.,* "because . . . the community expects [one]," improperly referenced community expectations. The State notes

that none of appellant's complaints were made at trial and argues that the prosecution's jury argument was within proper boundaries.

 The record reflects that at no point during or following the prosecution's jury argument at punishment did counsel for appellant either object or request instructions to cure comments he found objectionable. A defendant's right not be subjected to incurable erroneous jury arguments is one of those rights that is forfeited by a failure to insist upon it. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997). A defendant's failure to object to a jury argument or his failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal. *Id.* Because appellant failed to object to the jury argument of the prosecution, we hold that his complaints were not preserved for review. Points of error three through five are overruled.

The judgment of the trial court is affirmed.

---

4. In his brief, appellant terms this a "reverse community expectations argument."