NUMBER 13-04-048-CR 

 

                         COURT
OF APPEALS

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS
CHRISTI - EDINBURG

___________________________________________________________________

 

ARTURO BORJAS PERALEZ,                                      Appellant,

 

                                           v.

 

THE STATE OF TEXAS,                                              Appellee.

___________________________________________________________________

 

                  On
appeal from the 389th District Court

                           of Hidalgo County, Texas.

___________________________________________________  _______________

 

                     MEMORANDUM
OPINION

 

         Before
Chief Justice Valdez and Justices Rodriguez and Garza 

                      Memorandum
Opinion by Justice Rodriguez

 








Appellant, Arturo
Borjas Peralez, was charged with the offense of murder.  See Tex.
Pen. Code Ann. ' 19.02(b)(1) (Vernon 2003).  A jury found appellant guilty and assessed
punishment at sixty years' confinement in the Texas Department of Criminal
Justice-Institutional Division and a $10,000 fine.  The trial court has certified that this is
not a plea bargain case, and the defendant has the right of appeal.  See Tex.
R. App. P. 25.2(a)(2).  By five
issues, appellant challenges (1) the trial court's denial of his motion to
suppress, (2) the trial court's denial of his motion for directed verdict, (3)
the factual sufficiency of the evidence to support the jury's finding of murder,
(4) the admission into evidence of photographs that are more prejudicial than
probative, and (5) the State's use of improper jury argument.  We affirm.

I.  Background

All issues of law
presented by this case are well-settled, and the parties are familiar with the
facts.  Therefore, we will not recite the
law or the facts except as necessary to advise the parties of the Court's
decision and the basic reasons for it.  See
Tex. R. App. P. 47.4. 

II.  Motion to Suppress

By his first
issue, appellant contends the trial court erred in denying his motion to
suppress evidence gathered at his residence because it was the fruit of an
illegal search.[1]

A.  Standard of Review








We apply a
bifurcated standard of review to a trial court's denial of a motion to
suppress, giving almost total deference to the trial court's determination of
historical facts and reviewing de novo the trial court's application of the
law.  Maxwell v. State, 73 S.W.3d
278, 281 (Tex. Crim. App. 2002) (en banc). 
In addition, we must afford almost total deference to a trial court's
rulings on mixed questions of law and fact if the resolution of those questions
turns on an evaluation of the credibility and demeanor of a witness.  State v. Ross, 32 S.W.3d 853, 856
(Tex. Crim. App. 2000) (en banc).  We
review de novo mixed questions of law and fact that do not turn on the
credibility and demeanor of a witness.  Id.
(citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997)).  

When, as here,
the trial court does not make explicit findings of fact, we view the evidence
in the light most favorable to the trial court's ruling and assume the trial
court made implicit findings of fact that support its ruling so long as those
findings are supported by the record.  Ross,
32 S.W.3d at 855 (citing Carmouche v. State, 10 S.W.3d 323, 328 (Tex.
Crim. App. 2000)).  If the trial court's
decision is correct on any theory of law applicable to the case, the decision
will be sustained.  Id. at 856
(citing Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

B.  The Law








The Fourth
Amendment to the United States Constitution and article I, section 9 of the
Texas Constitution forbid unreasonable searches and seizures.  See U.S.
Const. amend. IV; Tex. Const.
art I, ' 9. 
Warrantless searches are per se unreasonable unless they fall under one
of a few exceptions.  Brimage v. State,
918 S.W.2d 466, 500 (Tex. Crim. App. 1996) (op. on reh'g en banc) (citing Kelly v. State, 669 S.W.2d 720,
725 (Tex. Crim. App. 1984)).  The Supreme
Court has held that the emergency doctrine is one such exception.  See Laney v. State, 117 S.W.3d 854,
861 (Tex. Crim. App. 2003).  In addition,
constitutional prohibitions against warrantless searches and seizures do not
come into play when a person gives free and voluntary consent to search.  Hernandez v. State, No. 13-02-620-CR,
2006 Tex. App. LEXIS 2853, at *6 (Tex. App.BCorpus Christi Apr. 6, 2006, no pet. h.) (citing Foster
v. State, 101 S.W.3d 490, 495 (Tex. App.BHouston [1st Dist.] 2002, no pet.)).

 Under the emergency doctrine
exception, police officers are not barred from making warrantless entries and
searches when they reasonably believe that a person within is in need of
immediate aid.  Mincey v. Arizona,
437 U.S. 385, 392 (1978); see Laney, 117 S.W.3d at 861-62.  Similarly, when the police come upon the
scene of a homicide they may make a prompt warrantless search of the area to
see if there are other victims or if a perpetrator is still on the
premises.  Mincey, 437 U.S. at 392.  In addition, the police may seize any
evidence that is in plain view during the course of their legitimate emergency
activities.  Mincey, 437 U.S. at
393 (citing Michigan v. Tyler, 436 U.S. 499, 509-10 (1978); Coolidge
v. New Hampshire, 403 U.S. 443, 465-66 (1971)); Laney, 117 S.W.3d at
862.  Moreover, the seizure of evidence
in a subsequent entry that "did not come from a more extensive search
beyond the scope of the plain view of the officers initially entering the
premises during the exigency" is lawful. 
Johnson v. State, 161 S.W.3d 176, 183 (Tex. App.BTexarkana 2005, pet.
granted).  

 








C.  Analysis

Through his first issue, appellant contends the trial court erred in
denying his motion to suppress evidence obtained at his residence because it
was the fruit of an illegal search.  More
specifically, appellant asserts that (1) the shotgun, (2) three shotgun shells,
and (3) photographs taken inside his residence should have been suppressed
because they were obtained without a warrant. 
We disagree.

The record establishes that appellant gave the Hidalgo County
Sheriff's Department his written consent to search his residence at
approximately 9:25 p.m.[2]  The record also shows that the crime scene
specialist did not begin to collect evidence, including the shotgun and three
shotgun shells, from the scene or to take photographs of the scene until
approximately 9:48 p.m., thirteen minutes after appellant's consent to search
was obtained.  Because the aforementioned
evidence was obtained after appellant gave his consent to search his residence,
we conclude that the trial court properly denied appellant's motion to suppress
with respect to the shotgun, three shotgun shells, and the photographs taken by
the crime scene specialist.  We next
determine whether photographs taken by other law enforcement personnel without
a warrant and before appellant consented to the search of his residence are the
fruit of an illegal search.








Deputy Martin Segura, the first officer to arrive at the crime scene
in response to appellant's 911 call that he had shot Maria Petra Rodriguez (the
victim), testified at the suppression hearing that he entered appellant's
residence to check on the victim.  Deputy
Segura also stated that he checked the other rooms in the house "for
officer safety" and to ensure that nobody else was in the house.  When the prosecution asked Deputy Segura if
he had gone "ruffling through drawers or looking under mattresses,"
he answered "no."  Deputy
Segura further testified that he entered the residence a second time, when the
emergency nature of the situation had passed, to take photographs of the crime
scene.  In addition, Investigator Miguel
Davila, Jr., testified at the suppression hearing that he entered the residence
after the emergency nature of the situation had passed for investigative
purposes and to take photographs of the crime scene.  Investigator Davila further testified that
all of the evidence obtained in the case was in plain view upon entering the
residence.  Based on the record evidence,
we conclude that the trial court could have found that Deputy Segura's initial entry
and search of the residence was permissible under the emergency doctrine
exception.  See Mincey, 437 U.S.
at 392; Laney, 117 S.W.3d at 861-62. 
In addition, we conclude that the trial court could have impliedly found
that the photographs taken after the passing of the emergency nature of the
situation, but before appellant gave his written consent for officers to search
his residence, were photographs of items that "did not come from a more
extensive search beyond the scope of the plain view of the officers initially
entering the premises during the exigency."  See Johnson, 161 S.W.3d at 183.  Therefore, we conclude the photographs were
lawfully obtained.  See id.  Thus, the trial court properly denied
appellant's motion to suppress.  We
overrule appellant's first issue.  








III.  Sufficiency of the
Evidence

By his second issue, appellant contends the trial court erred in
denying his motion for directed verdict. 
By his third issue, appellant contends that the evidence was factually
insufficient to support the jury's finding of murder.  More specifically, appellant asserts by his
second and third issues that the evidence was legally and factually
insufficient to prove beyond a reasonable doubt that he acted intentionally or
knowingly when he shot the victim.  

A.  Standard of Review

1.  Motion for Directed Verdict

We treat a challenge to a trial court's denial of a motion for
directed verdict as a challenge to the legal sufficiency of the evidence.  Williams v. State, 937 S.W.2d 479, 482
(Tex. Crim. App. 1996) (citing Cook v. State, 858 S.W.2d 467, 470 (Tex.
Crim. App. 1993)).  Evidence is legally
sufficient when, viewed in the light most favorable to the verdict, a rational
jury could have found the essential elements of the offense beyond a reasonable
doubt.  Id. (citing Jackson v.
Virginia, 443 U.S. 307, 318-19 (1979)). 
We measure the legal sufficiency of the evidence by the elements of the
offense as defined by a hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  A hypothetically
correct jury charge is one that accurately sets out the law, is authorized by
the indictment, does not unnecessarily increase the State's burden of proof or
restrict its theories of liability, and adequately describes the particular
offense proof.  Id.  








2.  Factual Sufficiency

We measure the factual sufficiency of the evidence in a jury trial by
the elements of the offense as defined by a hypothetically correct jury
charge.  See Adi v. State, 94
S.W.3d 124, 131 (Tex. App.BCorpus Christi 2002,
pet. ref'd).  In reviewing the factual
sufficiency of the evidence, we view the evidence in a neutral light.  Drichas v. State, 175 S.W.3d 795, 799
(Tex. Crim. App. 2005) (en banc) (citing Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996)).  There
are two ways in which a court may find the evidence to be factually
insufficient:  (1) the evidence
supporting the finding, considered alone, is too weak to support the jury's
finding beyond a reasonable doubt; or (2) the contravening evidence is so
strong that the State could not have met its burden of proof.  Id. (citing Zuniga v. State,
144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004)).

B.  Analysis








In order to prove that appellant committed the offense of murder under
section 19.02(b)(1) of the Texas Penal Code, the State had to prove that
appellant  intentionally or knowingly
caused the death of Maria Petra Rodriguez. 
See Tex. Pen. Code Ann.
' 19.02(b)(1) (Vernon
2003).  A person acts intentionally when
it is his conscious objective or desire to engage in the conduct or cause the
result.  Id. ' 6.03(a).  A person acts knowingly when he is aware that
his conduct is reasonably certain to cause the result.  Id. ' 6.03(b). 
In addition, intent may be inferred from circumstantial evidence, such
as the acts, words, and conduct of appellant. 
Guevara v. State, 152 S.W.3d 45, 50 ( Tex. Crim. App. 2004).  At trial, the State introduced into evidence
the 911 tape of the call made by appellant to the 911 operator relating to the
fact that he had shot the victim.  During
the course of the 911 call, appellant stated the following, in pertinent part: 

I just shot my wife. . . . I just killed my wife. . . . She was doing
a bunch of shit to me. . . . I got tired of her. . . . I got tired of her
already. . . . [L]ook, they are going to kill me with the needle. . . . I
already screwed it up. . . . I couldn't stand her anymore, see here. . . .
[S]he finally wanted to throw me out of the house. . . .

The
State also introduced into evidence appellant's written statement, which read
as follows, in pertinent part:

Maria kept laughing at
me so I went to the back room and I grabbed the gun.  I checked it to see if it was loaded. . . .
Maria continued telling me that I was a piece of shit . . . . Maria . . . kept
threatening me, telling me that they were going to lock me up and that I was
not going to get out anymore.  I told
Maria not to threaten me because I had the gun in my hand. . . . I tried to
fire a shot to scare her, but I shot her on the face.  I then shot 2 more times and I shot her on
the shoulder and on the face again. . . . I never intended to shot [sic] my
wife.  Before I fired the shot to scare
Maria, Maria lurched [sic] at me and I shot her on the face.

 

In
addition, the jury heard testimony from various State and defense witnesses,
including various law enforcement officials, 911 dispatchers, crime lab
employees, evidence technicians, and the doctor who performed the autopsy on
the victim.








Based on the record evidence, we conclude that the jury could have
inferred the requisite intent essential to the commission of the offense of
murder on the part of appellant from his acts, words, and conduct.  See Tex.
Pen. Code Ann. ' 19.02(b)(1) (Vernon
2003); Guevara, 152 S.W.3d at 50. Therefore, viewing the evidence in the
light most favorable to the verdict, as measured against a hypothetically
correct jury charge, we conclude that any rational trier of fact could have
found beyond a reasonable doubt that appellant intentionally or knowingly
caused the death of the victim. See Tex.
Pen. Code Ann. ' 19.02(b)(1) (Vernon
2003); Malik, 953 S.W.2d at 240; Williams, 937 S.W.2d at 482
(citing Jackson, 443 U.S. at 318-19). 
Thus, we conclude the evidence was legally sufficient to submit the
charge of murder to the jury and to support the jury's finding that appellant
committed the offense of murder.  We
overrule appellant's second issue.

Moreover, viewing the evidence in a neutral light, as measured against
a hypothetically correct jury charge, we conclude the evidence supporting the
finding that appellant acted intentionally or knowingly when he caused the
death of the victim, considered alone, is not too weak to support the jury's
finding beyond a reasonable doubt and that the contravening evidence is not so
strong that the State could not have met its burden of proof.  See Drichas, 175 S.W.3d at 799 (citing
Zuniga, 144 S.W.3d at 484-85). 
Thus, we conclude the evidence is factually sufficient to support the
jury's finding that appellant committed the offense of murder.  We overrule appellant's third issue.

IV.  Admission of Photographs

By his fourth issue, appellant contends the trial court erred in
admitting two photographs of the victim because their prejudicial effect
outweighed their probative value.  

A.  The Law








The determination of the admissibility of a photograph pursuant to
Texas Rule of Evidence 403 is left to the sound discretion of the trial
judge.  Paredes v. State, 129
S.W.3d 530, 539 (Tex. Crim. App. 2004) (citing Williams v. State, 958
S.W.2d 186, 195 (Tex. Crim. App. 1997)). 
     

Texas Rule of Evidence 403 provides that relevant evidence may be
excluded "if its probative value is substantially outweighed by the danger
of unfair prejudice."  Tex. R. Evid. 403.  Several factors may be considered in
determining whether the danger of unfair prejudice substantially outweighs the
probative value of photographs, including (1) the number of exhibits offered,
(2) their gruesomeness, (3) their detail, (4) their size, (5) whether they are
black and white or color, (6) whether they are close-up, (7) whether the body
is naked or clothed, and (8) the availability of other means of proof and the
circumstances unique to each individual case. 
Chamberlain v. State, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999)
(en banc) (citing Emery v. State, 881 S.W.2d 702, 710 (Tex. Crim. App.
1994) (quoting Long v. State, 823 S.W.2d 259, 272 (Tex. Crim. App.
1991)).  In addition, a photograph is
generally admissible if verbal testimony about the matters depicted in the
photograph is also admissible.  Paredes,
129 S.W.3d at 539 (citing Williams, 958 S.W.2d at 195).    

C.  Analysis

Appellant asserts that the trial court erred in admitting two
photographs, State's exhibit 24 and State's exhibit 25, because they were
"more prejudicial than probative of defendant's guilt."[3]  We disagree. 








At trial, appellant objected to the admission of exhibits 24 and 25,
arguing that they were more prejudicial than probative.  In response to appellant's objection, the
State argued that the photographs depicted the crime scene and should be
admitted for the jury to see the evidence of the crime.  In addition, Deputy Segura testified that
exhibits 24 and 25 depicted the body of the victim as it was found at the crime
scene.          Exhibit
24 is a color picture of the victim's face and upper-body.  The picture depicts the damage to the
victim's face from the shotgun wound and the blood on the victim's shirt from
the shotgun wound to her shoulder. 
Exhibit 25 is a color picture of the victim partially covered by a piece
of carpet.  The picture shows the blood
on the victim's shirt from the shotgun wound to her shoulder, her bloody ear,
and a blood stain on the carpet next to her head and shoulder.  The photographs, though gruesome,
"depict nothing more than the reality of the brutal crime
committed."  See Chamberlain,
998 S.W.2d at 237.         








With respect to the admissibility of photographs, this Court has held
that in murder cases, detailed photographs are relevant to the cause of death
of the victim and are probative evidence of the killer's culpable mental state.
 Zepeda v. State, 797 S.W.2d 258, 261
(Tex. App.BCorpus Christi 1990,
pet. ref'd) (citing Reimer v. State, 657 S.W.2d 894, 898 (Tex. App.BCorpus Christi 1983,
no pet.); Montelongo v. State, 644 S.W.2d 710, 713-14 (Tex. Crim. App.
1980)).  In addition, this Court has held
that a photograph is not rendered inadmissible merely because it is gruesome or
might tend to arouse the jury's passions. 
Id. (citing Purtell v. State, 761 S.W.2d 360, 371 (Tex.
Crim. App. 1988); Martin v. State, 475 S.W.2d 265, 267 (Tex. Crim. App.
1972); Guzman v. State, 649 S.W.2d 77, 80 (Tex. App.BCorpus Christi 1982,
no pet.)).  Moreover, the Texas Court of
Criminal Appeals has held the following:

[W]hen the power of the visible evidence emanates from nothing more
than what the defendant has himself done we cannot hold that the trial court
has abused its discretion merely because it admitted the evidence.  A trial court does not err merely because it
admits into evidence photographs which are gruesome.

Chamberlain, 998 S.W.2d at 237
(citing Sonnier v. State, 913 S.W.2d 511, 519 (Tex. Crim. App.
1995)).  Therefore, we cannot conclude,
based on the facts of this case, that the trial court abused its discretion in
admitting State's exhibits 24 and 25. 
Appellant's fourth issue is overruled.

V.  Improper Jury Argument

By his fifth issue, appellant contends the State engaged in improper
jury argument.  We disagree.

The standard of review for improper jury argument is to review the
record in its entirety to determine (1) whether any impermissible arguments
were made, and if so, (2) whether said impermissible arguments were so
prejudicial and harmful as to deprive the appellant of a fair and impartial
trial.  See Willis v. State,
785 S.W.2d 378, 385 (Tex. Crim. App. 1989) (en banc).  There are four permissible areas of jury argument:  (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) response to argument of opposing counsel; and
(4) plea for law enforcement.  Long v.
State, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991) (en banc) (citing Borjan
v. State, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990)).








Appellant contends that the prosecution engaged in improper jury
argument by stating the following during its closing argument in the
guilt/innocence phase of the trial: 
"We know he was there.  We
know he was there from his statement.  We
know he was there from the 911 call. 
Carmilo was there when his mother got shot."  Appellant objected to this jury argument as
being outside the record, and the trial court overruled the objection.  We conclude that the trial court properly
overruled the objection because said jury argument is a summation of the
evidence presented during the trial, and therefore, constituted permissible
jury argument.  See id.  

Appellant also asserts that the prosecution engaged in improper jury
argument by simulating the cocking of the shotgun used by appellant to shoot
the victim.  The prosecution made the
following jury argument during the guilt/innocence phase of the trial:

Did you hear
that?  (Cocked shotgun).  That was the last thing Maria Rodriguez
heard, right there.  He goes to the
closet, he grabs it, he checks to see if it's loaded, and then he goes and
points it at her.  What was he going to
do with it?  Scare her?  Then she lunged forward and he fires a shot,
and then he has to cock it one more time (cocked shotgun) and fire another
shot.

 








Appellant
objected to this jury argument as being outside the record, and the trial court
overruled the objection.  We conclude
that the trial court properly overruled appellant's objection because the
prosecution's cocking of the shotgun during its jury argument was based on a
reasonable deduction from the record evidence introduced at trial.  Based on the facts in this case, it is a
reasonable deduction (1) that the last thing the victim heard was the cocking
of the shotgun and (2) that appellant had to cock the shotgun again to fire
another shot at the victim.  Therefore,
the prosecution's  jury argument was
permissible.  We overrule appellant's
fifth issue.[4]

VI.  Conclusion

Accordingly, we affirm the judgment of the trial court.                              

NELDA
V. RODRIGUEZ

Justice

 

Do
not publish.

Tex.
R. App. P.
47.2(b).

 

Memorandum Opinion
delivered and 

filed this 25th day of
May, 2006.

 











[1]Appellant also asserts that the
trial court erred in denying his motion to suppress his written and oral
statements.  However, appellant does not
develop this assertion in his brief. 
Therefore, it is not before us.  See
Tex. R. App. P. 38.1(h)
(providing that appellant's brief must contain a clear and concise argument for
the contentions made, with appropriate citations to authorities and to the
record).





[2]To the extent appellant contends
his written consent to search was involuntarily given, his brief is
inadequate.  Therefore, such a contention
is not before us.  See Tex. R. App. P. 38.1(h). 





[3]Appellant also argues that (1) the
photographs in no way aided the jury in understanding verbal testimony, (2) the
State would not have been disadvantaged without their admission, (3) the
photographs failed to prove his intent, and (4) the photographs did not prove
anything "that the jury had not already learned through other means."  To the extent that these arguments are
advanced to demonstrate that the photographs were more prejudicial than
probative, they are inadequately briefed. 
Therefore, we will not consider them. 
See Tex. R. App. P.
38.1(h).





[4]We also note that appellant asserts
that the prosecution engaged in improper jury argument in six other
instances.  However, appellant failed to
preserve error in those instances.  In
order to preserve error in relation to improper jury argument, a defendant must
have objected to the jury argument complained of and pursued his objection to
an adverse ruling.  Cockrell v. State,
933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (en banc); Martinez v. State,
951 S.W.2d 55, 59 (Tex. App.BCorpus Christi 1997, no pet.).  A defendant's failure to object to a jury
argument or to pursue to an adverse ruling his objection to a jury argument
forfeits his right to complain about the argument on appeal.  Cockrell, 933 S.W.2d at 89; Martinez,
951 S.W.2d at 59.  In addition, if
a defendant's objection to a jury argument is sustained, he must have (1)
requested an instruction to disregard, if the erroneous argument was curable,
or (2) requested a mistrial, if the erroneous argument was incurable, in order
to preserve his complaint for appeal.  McGinn
v. State, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998) (en banc).

 

By his first complaint, appellant
contends that the prosecution argued outside the record by making reference to
his two year old son who was present when defendant shot the victim and by
stating that the child "ha[d] gone through enough."  Although appellant objected to the statement
and the trial court sustained the objection, appellant failed to either (1)
request an instruction to disregard, if the argument was curable, or (2)
request a mistrial, if the argument was incurable.  Therefore, he failed to preserve error with
respect to this complaint.  Id.  In addition, appellant failed to object to
the remaining five jury arguments about which he complains; therefore, he
failed to preserve error as to those complaints.  Cockrell, 933 S.W.2d at 89; Martinez,
951 S.W.2d at 59.  Because appellant
failed to preserve error with respect to the six complaints, they are not
before us.  See Tex. R. App. P. 33.1(a).

  
    

Furthermore, to the
extent that appellant seeks to complain that the cumulative effect of the
prosecution's improper jury arguments constitutes reversible error, appellant's
assertion is inadequately briefed and therefore is waived.  See Tex.
R. App. P. 38.1(h).